THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
FLOYD GORDON, Defendant-Appellant.

Third District    No. 80-377

Opinion filed March 27, 1981.

Robert Agostinelli and Karen Szpajer, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, Floyd Gordon, appeals from a judgment of conviction entered on a jury verdict finding him guilty of the offense of burglary. He was sentenced to a determinate term of six years imprisonment.

The issues raised by the defendant on review are several and concern the propriety of certain statements made by the prosecutor during his

opening statement and his rebuttal argument, and the admissibility of certain identification and expert witness opinion testimony.

At trial the prosecutor informed the jury during opening argument that the defendant was arrested because his fingerprints matched those found at the scene of the burglary. Referring to the investigation of the burglary scene by police officer Walt Krummel, who had noticed fingerprints near a broken window as well as shoeprints in the snow, the prosecutor stated:

> "He [Officer Krummel] had the lab called and they compared the fingerprints of the defendant. Found out it was in fact the defendant's fingerprints that was found on the scene.
>
> Officer Walt Jatkowski will testify to that. That the defendant's fingerprints was found on the inside of the window. * * *
>
> * * *
>
> * * * He [the defendant] was placed under arrest based on the fingerprint identification. * * *"

At the conclusion of the State's opening argument, the defendant's trial counsel moved for a mistrial on the basis that the prosecutor had informed the jury that the defendant's fingerprints were on file with the Peoria police department prior to his arrest and that the jury could thus infer that the defendant had committed other crimes. Following a discussion outside the presence of the jury, the defendant's motion was denied on the grounds that reasons aside from prior criminal activity exist for the keeping of fingerprint records by the police and that the prosecutor had made no references to any prior arrests or convictions of the defendant.

In response to a motion *in limine* made by defense counsel to exclude testimony by police witnesses as to why the defendant was arrested because such testimony was irrelevant and would bring out the fact that the defendant's prints were on file at the police station, the trial judge agreed with the defendant's position. The prosecutor subsequently stated that he would not elicit testimony that the police compared the latent print with the defendant's print on file, because the State did not intend to introduce the old print into evidence.

Laura Russell was the State's first witness. She testified that on February 19, 1980, she and her six-year-old daughter left their apartment at approximately 7:45 a.m. to take her nephew to school. All the doors and windows leading into the apartment were locked. Upon returning home some 15 minutes later, Ms. Russell noticed that a shade had been removed from a window in the living room. A pane of glass was broken, although the window itself was latched. A decorator telephone and a cassette tape player were missing.

Officer Walt Krummel testified that he arrived at the Russell apart-

ment at approximately 8:15 a.m. Krummel examined the broken window and followed the shoeprints found in the snow outside the window to two nearby apartments. The first apartment, number 645, was approximately a half block away from the Russell apartment. From there, Krummel followed the prints to apartment 667. Over a hearsay objection, Krummel testified that a Mrs. Gordon lived there. Later, Officer Norm Green testified that the Mrs. Gordon living in apartment 667 was Georgia Gordon, the defendant's sister. This information was given to Officer Green by the defendant.

The defendant was arrested by Officers Krummel and Green at approximately 10:30 a.m. on February 19, 1980, in apartment 480, located about a block away from the Russell apartment. Officer Krummel testified that he observed shoeprints in the snow outside apartment 480 similar to the prints outside Russell's apartment. At the time of his arrest, the defendant put on a pair of brown suede shoes that were wet above the soles. The soles of the shoes were similar to the prints found outside both the Russell apartment and apartment 480.

Officer Walt Jatkowski, a physical evidence expert, was the State's final witness. He explained how fingerprint and shoeprint comparisons were made. In processing the area surrounding the broken window in the Russell apartment, Officer Jatkowski developed a latent fingerprint on the left hand side of the window frame inside the apartment. Jatkowski testified that he made a comparison of the defendant's known prints and the latent fingerprint he developed on Russell's window. In his opinion, the defendant's left ring finger made the latent impression on the window frame. Over defense objection, Jatkowski gave his opinion that the print was made when the defendant grasped the window with his left hand and pulled himself through the window.

Officer Jatkowski further testified that a visual comparison of the shoeprint on the windowsill and the soles of the defendant's shoes indicated that both the prints and the soles had similar class characteristics. He was unable to make a positive identification of the individual minute characteristics.

On cross-examination Officer Jatkowski testified that the latent print found on the window frame was a partial print and that portions of it were smeared. However, he indicated that the area of the latent print was sufficient for him to make an identification. In total, Jatkowski found 13 similar characteristics between the latent print and the print of the defendant's left finger. The least number of similar characteristics on which Officer Jatkowski had given a positive identification was 10, the largest number was 25.

The defense rested without putting on any evidence. Closing argu-

ments were then given in which the key issue of the defendant's identity in this circumstantial evidence case was recognized. In his rebuttal argument the prosecutor pointed out the expert qualifications of Officer Jatkowski. He further noted that neither the jury nor defense counsel were experts in fingerprinting and then urged the jury to judge the validity of the fingerprint identification based on the testimony of the expert witness and on the other evidence adduced at trial. He stated that it was important that the jury not judge the case based on their experience as fingerprint experts.

The defendant initially assigns as error the prosecutor's opening statement comments indicating that the defendant's fingerprints were on file with the police prior to his arrest. The defendant argues that these comments improperly informed the jury of the defendant's prior criminal record.

As a general rule, evidence that a defendant has committed other crimes or acts of misconduct distinct and wholly independent of the crime for which he is being tried is inadmissible. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347.) This general rule is subject to exception where the evidence of other criminal activity shows motive or intent, identity, absence of mistake or accident, or the existence of a common scheme or design. (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) This exception applies only where the probative value of the evidence clearly outweighs its prejudicial effect. *People v. Watson* (1977), 55 Ill. App. 3d 564, 371 N.E.2d 113.

In considering what constitutes evidence of prior criminal activity, it is clear that the words "arrest" or "conviction" need not be uttered as long as the jury can infer prior criminality on the part of the defendant. However, references by police or security personnel to prior contacts with a defendant do not necessarily infer prior criminality by the defendant. (*People v. Boone* (1977), 55 Ill. App. 3d 83, 370 N.E.2d 673.) For this reason a police officer's testimony that he recognized the defendant from a police photograph was held by this court not to imply a prior record. *People v. Foster* (1980), 82 Ill. App. 3d 634, 402 N.E.2d 943.

■■ Applying these principles to the case at bar, we find that the prosecutor's opening statement, which included a reference to the police laboratory's identification of the defendant's fingerprints at the scene of the burglary, did not constitute evidence of another crime. Therefore, the trial court properly allowed the statement to be made and correctly denied the defendant's motion for a mistrial. It is reasonable to believe that fingerprints may be on file with the police for a number of reasons unrelated to prior criminal activity. For example, fingerprints of crime victims may be on file, as may the fingerprints of security personnel. In

addition, in the present case the prosecutor made no references to prior arrests or convictions, nor was the fingerprint card introduced into evidence.

*People v. Hudson* (1972), 7 Ill. App. 3d 333, 287 N.E.2d 297, relied on by the defendant, is distinguishable from the case at bar. In *Hudson* this court determined that it was clear error for a fingerprint expert to testify that he compared latent prints found at the scene of a robbery with the defendant's prints on file with the Illinois Bureau of Identification. The expert witness made repeated references to the Bureau prints, and his entire testimony manifested a clear implication to the jury that the defendant's prints had indeed been on file with the Bureau. In citing the error, we noted that there was obviously no need for the challenged testimony, since the expert admitted on cross-examination that he could have made a positive identification of the defendant's latent prints by comparing them with prints taken subsequent to the defendant's arrest. The reversal of the defendant's conviction in *Hudson* and remand for a new trial were based on the cumulative effect of several errors. In the present case the only reference to the defendant's prints being on file with the police prior to his arrest for the instant offense was made during the prosecutor's opening statement. Because the reference was singular and ambiguous, in that it did not clearly indicate that the defendant had a prior criminal record, we hold that its inclusion in the prosecutor's opening statement does not constitute reversible error.

■■ The defendant next contends that the trial court improperly admitted testimony by Officers Krummel and Green as to the identity of Mrs. Georgia Gordon, the defendant's sister. Because the defendant failed to object to the testimony of Officer Green during trial, and because he failed to raise this issue in his post-trial motion, we hold that he has waived any alleged errors arising from the contested testimony. *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.

Additional error is asserted by the defendant in the opinion expressed by Officer Jatkowski, the State's expert witness, as to how the defendant's fingerprint was placed on the window frame of the Russell apartment. The defendant contends that the average man is familiar with how fingerprints are placed on a piece of glass or other objects. Accordingly he argues that the allowance of Jatkowski's opinion testimony was erroneous. See *People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709.

■■ The trial judge has broad discretion to determine the qualifications of experts and to decide whether expert testimony may assist the jury in its deliberations. Because experts have not been limited to a recitation of merely what they observed, but have been permitted to express their opinion regarding causation, we find no abuse of discretion in the trial judge's decision to allow Officer Jatkowski to state his opinion regarding

how the defendant's fingerprint was placed on the window ledge of Laura Russell's apartment.

Lastly, the defendant contends that statements made by the prosecutor during rebuttal argument incorrectly informed the jury that it could not compare the defendant's fingerprints with the latent prints introduced into evidence and improperly shifted the burden of proof onto the defendant by stating that the fingerprint expert was the only expert witness presented. The defendant has waived any error in the prosecutor's comments by failing to object to them during the course of the trial or to include them in his post-trial motion. (*People v. Lee* (1980), 84 Ill. App. 3d 441, 405 N.E.2d 860.) Contrary to the defendant's assertions, the instant case is not an extremely close one such as would require consideration of the alleged errors under the plain error rule on the basis that they were so prejudicial that they denied the defendant a fair trial.

For the foregoing reasons, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.