THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS EDWARD DUNLAP, Defendant-Appellant.

Second District   No. 76-556

Opinion filed April 26, 1978.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Thomas Dunlap, was charged by a three-count indictment with the possession of two controlled substances and cannabis. Count I of the indictment charged he knowingly possessed more than 200 grams of a substance containing amphetamine in violation of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(6)); count II alleged he similarly possessed more than 30 grams of a substance containing lysergic acid diethylamide (LSD) (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(8)); and count III alleged he possessed more than 30 but less than 500 grams of a substance containing cannabis in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704(d)). Defendant was found guilty after trial by jury of all three counts and sentenced to concurrent terms of four years to four years and a day imprisonment.

On appeal defendant contends that the trial court erred when it denied his motion to suppress evidence seized in a search of his apartment made pursuant to a search warrant and that he was denied a fair trial by the admission of evidence of and argument to the jury regarding other crimes, that is, that he sold narcotics when he was charged only with their possession.

The complaint and affidavit for search warrant was executed by Detective Weaver of the Aurora Police Department before a notary public and described defendant's residence and listed the things to be seized therein, including white cross amphetamine tablets and cannabis. It stated that Weaver, having been advised by others that the residence was a source for the sale of narcotics, watched the apartment and that he saw Nathaniel Allen enter it and come out carrying a white canvas bag; that he further observed Allen remove a small bag containing a white substance from the canvas bag and hand it to Melvin Moss, who was known to Weaver to have a narcotics conviction; and that Allen and Moss were then arrested and the results of field tests made of the white substance and cannabis found in the canvas bag were positive. The affidavit further stated that Detective Weaver observed several other

persons enter the residence and leave carrying similar packages and that he had knowledge of two previous controlled buys of narcotics made from defendant. The search warrant was issued by the judge at 9:28 p.m. on July 17, 1974, and, at approximately 10 p.m. on that date, a search of defendant's residence by Aurora police officers and agents of the Federal Drug Enforcement Administration was made pursuant to the warrant. Approximately 6,600 amphetamine tablets, weighing 344.2 grams, 1,000 LSD tablets, weighing 53.7 grams, and 430.5 grams of marijuana were found in the apartment and seized by the officers.

■■ ■ Defendant contends the complaint for search warrant was defective in that it contained insufficient factual information to support a finding of probable cause. To support the issuance of a search warrant, the complaint must state "facts sufficient to show probable cause" and must particularly describe the place or person, or both, to be searched and the things to be seized. (Ill. Rev. Stat. 1973, ch. 38, par. 108—3.)

> "[T]o support the issuance of a search warrant, the probable cause which is required has two dimensions. First, facts must be related which would cause a reasonable man to believe a crime had been committed. Secondly, facts must be set forth which would cause a reasonable man to believe the evidence was in the place to be searched." (*People v. George* (1971), 49 Ill. 2d 372, 377, 274 N.E.2d 26, 29; *People v. Francisco* (1970), 44 Ill. 2d 373, 376, 255 N.E.2d 413, 415.)

The basis for probable cause must be found in the complaint and affidavit for search warrant and the complaint must set forth adequate underlying circumstances so that the issuing judicial officer can make an independent evaluation of the complainant's conclusion that evidence of a crime is where he says. Where the complainant relies not upon personal observation but upon facts given him by persons not named in the complaint and affidavit, and not appearing before the judge, those facts must be set forth which caused the complainant to conclude the informant was credible and his information reliable. *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584; *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *People v. Elias* (1925), 316 Ill. 376, 147 N.E. 472; *People v. Lindner* (1975), 24 Ill. App. 3d 995, 322 N.E.2d 229.

■■ In the case at bar the complaint and affidavit for search warrant sets forth no facts to support the reliability of the information given Detective Weaver by the unnamed informants mentioned therein and those facts may not be considered in determining whether probable cause existed to search defendant's apartment. That information, however, which was obtained from unnamed sources whose credibility could not

be adequately tested by the issuing judge, was not essential to the issuance of this search warrant. The complaint did describe the personal observations of Detective Weaver, that is, that he saw Allen enter defendant's apartment and come out carrying a white canvas bag from which he delivered another bag containing a white substance to Moss and that the contents of the bag were tested and found to contain a controlled substance. These facts would reasonably and adequately support Weaver's belief that Allen obtained the drugs in defendant's residence. Weaver's further observation that several other persons entered the apartment during a relatively short period of time and departed carrying packages similar to the one carried by Allen would lead a reasonable person to believe that drugs would be found in the apartment. While the further allegations of the complaint that defendant's residence was a known source for the sale of narcotics and that defendant had previously made such sales under controlled circumstances are also not sufficiently supported by facts stated in the complaint from which the issuing judge could determine their reliability (see *People v. Parker* (1968), 42 Ill. 2d 42, 245 N.E.2d 487), the personal observations of Weaver are sufficient to support a finding of probable cause under these circumstances. "The probability, not a *prima facie* showing, of criminal activity is the standard of probable cause. [Citation.] An affidavit for a search warrant must be interpreted realistically and in judging probable cause issuing magistrates are not to be confined by restrictions on their common sense. [Citation.]" (*People v. Ranson* (1972), 4 Ill. App. 3d 953, 956-57, 282 N.E.2d 462, 464; see *United States v. Ventresca* (1965), 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746; *Aguilar v. Texas* (1964), 378 U.S. 108, 111, 12 L. Ed. 2d 723, 726, 84 S. Ct. 1509, 1512.) The trial court correctly denied defendant's motion to suppress the material seized in his apartment pursuant to the search warrant herein.

Defendant also contends he was denied a fair trial by the admission of evidence of and by argument to the jury relating to other criminal offenses. He argues that the admission of two scales, a notebook, with his initials on the cover and containing notations relating to sums of money and narcotics, and a Physicians' Desk Reference, a book containing information about drugs, all seized in the search of his apartment, was prejudicial and that references made by the prosecutor during cross-examination and closing argument regarding the use of these items of evidence for narcotics sales and defendant's involvement in drug transactions constituted reversible error. The references defendant finds objectionable include argument by the State's Attorney that the scales, which were calibrated to ounces, were used to weigh drugs; that from a statement by defendant that he "was not making too much money" it

could be inferred he referred to his narcotics transactions, and that the Physicians' Desk Reference was used by defendant to learn about drugs and their identification because he was selling them.

While defendant admitted he was aware of the presence of a small quantity of marijuana found in a pizza pan in the oven in his apartment, he denied having any knowledge of the presence of the drugs found in his bedroom closet and in a shoebox in his refrigerator. He suggested that because numerous other persons had keys to his apartment, one of them might have planted the narcotics there without his knowledge.

■■ Generally, evidence of other crimes committed by a defendant for which he is not being tried is not admissible unless it is relevant in "placing a defendant in proximity to the time and place of the presently charged crime, aiding or establishing identity, or tending to prove design, motive or knowledge. [Citations.] Such evidence, however should not be admitted unless it may be said that its probative value in establishing guilt outweighs its prejudicial effect. [Citations.]" (*People v. Butler* (1975), 31 Ill. App. 3d 78, 80, 334 N.E.2d 448, 450; see *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) This court required in *Butler* that the need for the evidence be balanced against the prejudicial effect its admission might have on the jury. If the court determines that its probative value in the case is outweighed by its prejudicial effect and that the jury might then "convict a man because it appears that he is of bad character and therefore probably committed the crime rather than because of the evidence of his guilt or innocence" the evidence should be excluded. *Butler*, 31 Ill. App. 3d 78, 81, 334 N.E.2d 448, 451.

■■ ■ The admission in evidence of the possession of narcotics paraphernalia to show knowledge of the possession of narcotics was approved by our supreme court in *People v. Harris* (1972), 52 Ill. 2d 558, 560-61, 288 N.E.2d 385, 386-87. In *People v. Wilson* (1970), 46 Ill. 2d 376, 381, 263 N.E.2d 856, 859, the court allowed the admission of evidence regarding a sale of narcotics by the defendant at his apartment one hour prior to its search to negate the defendant's contention that he had no knowledge of the presence of the narcotics in the apartment.

> "In narcotics cases, the prosecution may meet its burden of proving the knowledge essential to a conviction for possession by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place they were found. [Citation.]"
> (*Wilson*, 46 Ill. 2d 376, 381-82, 263 N.E.2d 856, 860.)

Clearly, the probative value of the evidence objected to by defendant in this case to negate his claimed lack of knowledge is not outweighed by any possible prejudicial effect it may have had on the jury and the evidence was properly admitted.

In addition to the conviction of count III of the indictment alleging possession of cannabis, defendant was convicted of counts I and II charging separate violations of sections 402(6) and 402(8) of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, pars. 1402(6), 1402(8)) for the possession of amphetamines and lysergic acid diethylamide and was sentenced to concurrent terms in the penitentiary thereon. In *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, the court held that the simultaneous possession of more than one type of controlled substance constitutes a single offense for which there can be only one conviction and for which only one sentence may be imposed. We find *Manning* applicable to the circumstances of this case.

■■ For the reasons stated the judgment of the Circuit Court of Kane County is affirmed with respect to the offenses of possession of cannabis and possession of lysergic acid diethylamide; it is reversed with respect to the conviction for possession of amphetamine.

Affirmed in part; reversed in part.

RECHENMACHER and WOODWARD, JJ., concur.